Luiz GODOY et al., Plaintiffs,

v.

NEW RIVER PIZZA, INC.,
et al., Defendants.

No. 07–61010–CIV.

United States District Court,
S.D. Florida.

July 10, 2008.

Gregg I. Shavitz and Stacey Hope Cohen, The Shavitz Law Group, P.A., Boca Raton, FL for Plaintiff.

Lance Paul Richard of Lance P. Richard, P.A., Stuart, FL, for Defendant.

### ORDER

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court upon Plaintiff Luiz Godoy's Motion For Attorney's Fees (DE 128). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

Plaintiffs brought this action against Defendants under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* (2006) (hereinafter "FLSA"), for unpaid overtime wages. Plaintiffs were previously employed as pizza delivery drivers with Defendant New River Pizza, Inc. The law firm representing Plaintiffs has filed two previous suits under the FLSA against Defendants. *Monterio v. New River Pizza, Inc.,* 06–61112–CIV–DLG; *DeSouza v. New River Pizza, Inc.,* 07–60250–CIV–FAM. Both prior suits were resolved by way of settlement. Despite, or possibly because of, the Parties' history, they engaged in a protracted and unnecessarily difficult discovery process in the instant action. This included the Court granting several motions for sanctions and at one time striking Defendants' Answer and entering a Default for their failure to comply with the Court's discovery Orders. Ultimately, the case proceeded to trial, and the Jury awarded Plaintiff Luiz Godoy damages in excess of those initially claimed, while the other Plaintiffs received approximately the damages claimed.

Plaintiffs now seek to recover the attorney's fees and costs their law firm

incurred in the successful prosecution of this action. Plaintiffs allege that their attorneys spent over 270 billable hours in their efforts to prosecute this action; they seek a total award of $80,180.00 for attorney's fees, plus costs in the amount of $3,037.21. While a party has a right to attorney's fees incurred in the successful prosecution of his claims under the FLSA, 29 U.S.C. § 216(b), the courts have a corresponding duty to make sure that such an award is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (noting that reasonableness is the bedrock upon which the determination of the amount of attorney's fees rests). The determination of exactly what amount of fees to award is vested in the sound discretion of the Court. Normally, the adversarial process of the opposing party scrutinizing the fee motion aids the Court in making its determination. The Court was not so fortunate in this action. *See* DE 129.

The guiding light for the Court's analysis is always reasonableness, fully informed by its duty to exercise care and restraint in awarding fees, lest "[u]ndue generosity encourage some members of the bar to seek out clients and encourage litigation over disputes that otherwise might not reach the courts." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2675.1 (1998 & West Supp.2008). ■■■ To calculate a reasonable fee, the Court must utilize the "lodestar" method. *See Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). In computing the lodestar, the first step is to determine the reasonable hourly rate. A "reasonable hourly rate" has been defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputa-

tion." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (quoting *Norman*, 836 F.2d at 1299). The Court is deemed an expert on the issue of hourly rates in this community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303). Counsel for Plaintiff Mr. Gregg I. Shavitz, Esq. requests an hourly rate of $350 per hour. The Court has previously found that a reasonable hourly rate for Mr. Shavitz, Esq. is $300.00 per hour. *See* DE 50. Nothing compels the Court to revisit this determination, and it will remain the same herein. Upon review of the documents submitted herein by Plaintiff, the Court finds that given the expertise required for the work performed in this matter and the quality of work submitted, Ms. Christine M. Duignan, Esq. is entitled to a reasonable lodestar of $200.00 an hour.

The importance of a lodestar determination cannot be overstated. In an effort to guide the courts in this determination, Local Rule of the Southern District of Florida 7.3(A)-(B) lists six categories of information that a fee motion must contain. Plaintiffs have listed several paralegals in their billing records, yet nothing but the bald assertions contained in the Declaration of Greg Shavitz, Esq. (DE 128, Ex. B) attest to a lodestar for the paralegals of $100.00 an hour. Plaintiffs' expert has not seen fit to comment on the paralegals' hourly rate, and nothing suggests to the Court the nature of the paralegals' training or the substance of their work that would demand such a fee. Given Plaintiffs' failure to provide the Court with this information, the nature and difficulty of this area of law, and the Court's own expertise, it finds that a lodestar of $50.00

per hour for the paralegals involved in this case is reasonable.

 Once the lodestar is set, the Court must determine the reasonable number of hours expended by Plaintiffs' attorneys in the successful prosecution of this action. This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir.1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis omitted). The burden of establishing that the time for which compensation is sought was reasonably expended on the litigation rests on the applicant. *See id.* at 428. The fee applicant must provide the Court with specific and detailed evidence that will allow the Court to accurately determine the amount of fees awarded. *Id.* At the same time, the party opposing the fee application must satisfy its obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *Id.* If the party moving for fees fails to exercise the requisite billing judgment, the Court is obligated to do so by reducing the amount of hours and "pruning out those that are excessive, redundant or otherwise unnecessary." *Id.*

The Court has carefully scrutinized Plaintiffs' filings. In doing so the Court uncovered several instances where Plaintiffs' counsel attempted to so-called "double dip" from fees and costs previously awarded as sanctions during the discovery process.[1] In addition, there are several striking discrepancies with the 51 pages of billing records submitted by Plaintiffs with this Motion and the previous ledgers submitted to the Court. These discrepancies are not merely isolated scrivener's errors but significant differences in attorneys' representations concerning the amount billed and the attorney who supposedly performed the work.

 As noted above, the Court previously granted several of Plaintiffs' Motions To Compel and pursuant to Federal Rule of Civil Procedure 37 awarded sanctions for the same. With one of Plaintiffs' previous motions for attorney's fees they represented that Mr. Shavitz on 9/16/2007 he spent .8 hours working on a perfunctory Motion To Compel. *See* DE 40, Ex. 2. Six months later, in the instant submission by Plaintiffs, there is a nearly identical entry for the same day, which states that Mr. Shavitz spent 1.5 billable hours on a motion to compel. There are no other entries on 9/16/2007, and on the following day the entries are identical in the billing records submitted at DE 40, Ex. 2 and DE 128, Ex. C. This is both double billing and padding the bill by Plaintiffs' counsel.

This is not the only instance of hours being inflated in the instant filing. For an entry on 9/25/2007, Mr. Shavitz once stated that he billed 1 hour for time spent on "depo prep; review of past files against D." DE 40. In the instant Motion the entry for the same day now posits that he spent 2 billable hours on the same action. There are numerous other instances of such inflated billing once Plaintiffs' hours compiled for purposes of this Motion are compared to his previous ledgers.

Further, these inconsistencies in Plaintiffs' billing also attaches to the attorney who worked on the case. Plaintiffs previously moved for attorney's fees for giving notice to potential opt-in Plaintiffs. In support thereof they submitted time-

---

1. the court notes that some of the costs claimed by Plaintiffs were previously awarded and others are unreasonable given the nature of their claim. Therefore, the Court shall reduce the costs awarded by $1,000.00

sheets reflecting that attorney Mr. Shavitz spent .8 hours to "Continue research and preparation of Opt In [sic] Motion." DE 93, Ex. 2. The instant billing records reflect that attorney Ms. Duignan worked on the same day, with the same entry, for the same time. DE 128, Ex. 2, p. 6. Ms. Duignan, as established above has a lodestar of $200.00, while Mr. Shavitz's lodestar is $300.00. This case of Mr. Shavitz presumably taking credit for Ms. Duignan's work in earlier Motions, at an inflated price, is also reflected in the docket entry for 9/12/2007 for "Revise Opt–In Motion, memo based upon corp rep's Testimony; incorporated depo testimony of D into Motion." DE 93, Ex. 2. The same entry is credited to Ms. Duignan on the same day in the entry submitted with the attorney's fees logs attached to the instant Motion (DE 128) that Mr. Shavitz previously claimed were hours he worked.

In addition to the inexplicable and sanctionable discrepancies in the billing statements submitted by Plaintiffs already noted, the Court's fee award is also informed by the lackadaisical manner that their attorneys, at times, prosecuted this action. To be fair, many of Plaintiffs' filings were adequate and demonstrated a quality work product. However, with respect to several filings, Plaintiffs' attorneys did not file the appropriate motions or documents within the time prescribed by the Court. This resulted in, *inter alia,* their Motion For Summary Judgment (DE 84) being denied and a fee application being denied. *See* DE 87 (denying Plaintiffs' Motion For Summary Judgment, because it was filed almost a month after the deadline previously imposed); DE 95 (denying a fee application because the form-motion submitted was identical to a previously granted fee application by the Court and not the one to which Plaintiffs were entitled).

This careless work product was also reflected in Plaintiffs' failure to follow through and send an Opt–In notice to other employees similarity situated to Plaintiffs. At Pre–Trial Conference, Plaintiffs noted that Defendants had still not produced the names and addresses of putative Opt–In Plaintiffs as required by the Court's Order (DE 88). Because they lacked the addresses, Plaintiffs had not sent out the Opt–In Notice or moved to certify other New River Pizza employees as a class. However, the Court's Order was clear that it was incumbent upon Plaintiffs to inform the Court of Defendants' compliance with its Order granting conditional approval of a class of Defendants' employees. Plaintiffs never informed the Court or filed a formal motion to compel this information. It is not the Court's case to prosecute.

Therefore, based on the billing discrepancies in Plaintiff's submission, their neglect in reasonably prosecuting certain aspects of their case, and the fact that many of the areas raised in their fee application have been previously addressed and compensated, the Court will not award Plaintiffs their attorney's fees in the following areas: Plaintiffs' various Motions To Compel, Plaintiffs' Motion For Summary Judgment, and Plaintiffs' Opt–In Notice. Therefore, the Court will reduce the amount awarded to Plaintiffs by the following: Greg I. Shavitz, Esq.'s billable hours claimed shall be reduced by 11.9 for his time spent on the Motions To Compel, 5.5 for the Opt–In work, and 1.8 for his summary judgment work, for a total of 19.2 billable hours; Christine M. Duignan, Esq.'s billable hours claimed shall be reduced by 4.7 for her time spent on the Motions To Compel, 9.4 for the Opt–In work, and 18.5 for her summary judgment work, for a total of 32.6 billable hours; the paralegals' work will be reduced by 9.5

billable hours for their work in the afore-mentioned areas.

 In addition to these specific areas the Court also finds that it would be unreasonable to spend as much time as Plaintiffs' attorneys did in prosecuting many areas of this claim, and therefore, the Court will reduce the same. First, the 8/3/07 entry for conference concerning Plaintiff's Statement Of The Claim is unreasonable. This information is fully contemplated in the 7/31/07 entry. Therefore, the Court shall strike the 1 billable hour in the 8/3/07 entry. Second, Plaintiffs' counsel is a leader in this specialized field. The amount spent on many discovery requests is unreasonable given the fact that he is using forms that do not require an attorney billing $300.00 an hour to prepare, and he has previously litigated similar claims against the same Defendants on two prior occasions. Therefore, the Court will reduce the time Plaintiffs' seek for discovery, exclusive Plaintiffs' motions to compel and depositions, from 21.4 billable hours by Mr. Shavitz to 4 billable hours, 4.9 billable hours by Ms. Duignan to 3 billable hours, and 7.5 billable hours by the paralegals to 5 billable hours.

Likewise, the Court finds that the 10/16/07 entry by Mr. Shavitz for research concerning "tip credit cases and overtime rate" is also unreasonable. The Court will strike this entry for 2.1 billable hours in its entirety. The amount of time Plaintiffs' attorneys spent on their motion for default judgment is also unreasonable. The Court will therefore reduce the fees from 3.5 billable hours claimed by Mr. Shavitz to 1 billable hour, 6.7 billable hours by Ms. Duignan to 1 billable hour, and 2.3 billable hours by the paralegals to 1 billable hour. The Court will also reduce the hours Plaintiffs claim were incurred for their Response to the Motion For Reconsideration; the Court finds 6.3 billable hours unreasonable and will award 1 billable hour for

Ms. Duignan for the same. In addition the Court will reduce the amount that Plaintiffs' attorneys seek for their attorney's fees motions. The Court will reduce the fees from 1.7 billable hours claimed by Mr. Shavitz to 1 billable hour, 8.3 billable hours by Ms. Duignan to 1 billable hour, and. 9 billable hours by the paralegals to. 5 billable hours.

Based on the foregoing deductions the Court will reduce the hours claimed by Mr. Greg Shavitz, Esq. from 150.4 billable hours to 117.5 billable hours, by Ms. Christine Duignan, Esq. from 79.6 billable hours to 26.8, and by the paralegals involved in this action from 42 .2 billable hours to 28.5. Therefore, Plaintiffs shall be compensated for attorneys' fees in the amount of $42,035 and costs in the amount of $2,037.21, for a total award of $44,072.21.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Plaintiffs do have and recover from Defendant New River Pizza, Inc. the sum of $44,072.21 as attorney's fees and costs incurred in the successful prosecution of this action, for all of which let execution issue.